## Miller vs. Patrick &c.

Error to the Madison County Court.

*Statutes. Processioning of land. Perpetuation of testimony. Notice. County courts. Error.*

Judge MILLS delivered the Opinion of the Court.

MOTION. | 7tm 359
122    113

Case 75.

June 13.

THE defendants in error gave notice, by advertisement, that they would attend, with the processioners appointed by the county court, to procession a tract of land, claimed by them, being a settlement and preemption of 1400 acres, and that they would take depositions at the same time, to establish the lines and corners. A certificate, or report of the proceedings of the processioners was returned, together with a plat, and some depositions which had been taken, to the clerk's office, and the court was applied to, to approve the same, and direct the whole report to be recorded.

*Report of the standing processioners of their proceedings, and testimony taken before them, offered to be approved and recorded.*

Miller, the plaintiff in error, appeared, and excepted to the report, and objected to its being recorded.

*Report excepted to, and motion opposed by plaintiff in error; but report received and recorded.*

The court overruled his objections, and approved the report, and ordered it to record; and Miller has prosecuted this writ of error, and assigned sundry errors in the proceedings.

The questions arising are not free from embarrassment of too much legislation. The business of processioning lands, or of perpetuating testimony, might be provided for, in a short compass, and in a few provisions, settling on one, and but one, mode of doing it, instead of numerous provisions and different modes of appointing processioners, and different directions to each set, who should be appointed.

*Statutes in relation to the processioning of lands.*

The previous question here occurs; had the court itself any thing to do with the report, or was it a matter between the party and the clerk of the court, whether this report should be recorded, or not.

In 1796 the legislature provided for the appointment of three or more commissioners, by warrant issued to them by order of the court. These special commissioners had power to perpetuate testimony, which comprehended the greatest portion of the du-

*Special commissioners, to be appointed by the act of 1796, on the party's mo-*

Miller
vs.
Patrick &c.

tion, may take testimony, and go around the land, and re-mark it; but they report only the testimony, and that to the clerk only, not to the court.

Standing processioners appointed by that act, had no power to take testimony.

They could only *procession*, re-mark and renew the lost boundaries of the land.

Their report had to be approved by the court, and recorded by its order.

Act of 1815 authorized *special* commissioners to be appointed on the motion of the party, and empowered them to perform all that could be done by both classes of commissioners authorized by the act of '96.

ty assigned. It seems, however, that they might re-mark and procession the lands, touching the boundaries and calls of which they had taken testimony; and there is no provision relative to their reporting their acts of processioning. All the report these commissioners were to make, was to be made to the clerk, and not the court, and the clerk himself, ruled the whole question of recording.

The same act, however, by a distinct provision, and independent in its terms, in the fifth section thereof, directed the division of each county into districts, and the appointment of processioners, permanently in each. The sole power and duties of these commissioners appear to be, processioning only, or going round, re-marking or renewing the lost boundaries of every person's land, who applied to them and produced his title papers.

They had no power to take testimony.

They were to make a report of their proceedings, or rather to grant a certificate of their doings, which was to be returned to the clerk of the county court, and to be recorded by him, *being first approved by the court.*

Thus stood the law till 1815, when the legislature passed a new act, providing for the appointment of three commissioners by order of court, who were to associate with themselves the surveyor of the county, and were to go round, procession and re-mark the land of the applicant, and renew and put up lost boundaries, and make out a diagram of the land; they are also authorized to take testimony to establish boundaries, and to perpetuate it.

Their survey, as well as the depositions which they were to take, were to be reported to the clerk of the court, and to be by him recorded without consulting the court in the matter.

But this same act still keeps up the double machinery of general processioners, as well as special ones, and saves that part of the act of 1796, by the following provision.

"Nothing in this act shall be so construed as to repeal so much of the law as directs the county courts

to lay off their counties into districts, and appoint standing commissioners for the processioning lands; and the said courts are hereby authorized to make re-appointments in cases of death, removal, or refusal to act, of any of the processioners, at any time when they may deem it expedient; *but said processioners shall be governed by the regulations contained in this act, any thing to the contrary notwithstanding.*"

*MILLER vs. PATRICK.*

*Their report of processioning and of the testimony directed to be made to the clerk, and not to the court.*

Whether these general or standing processioners, (who are the kind of processioners that have made the report in question,) can take depositions to perpetuate testimony, as these have done, and whether the court, and not the clerk, has any thing to do with the report, either of the processioning, or of the testimony, depends upon the effect and construction of the last clause of the section just recited, when construed with the provision of the act of 1796, and forms the main questions in the case under consideration.

*Standing processioners, appointed by the act of '96, directed to be kept up, and to be governed by this act of 1815.*

We have already seen that the special commissioners have power to perpetuate testimony, and the general commissioners had not that power, as the law stood before the act of 1815. Does the clause in the latter act, which directs the general commissioners to be governed by its regulations applicable to the special ones, confer the power to the general ones to take testimony? We conceive that it does, and that while the general processioners are to conform to the rules governing the special commissioners in things which they could previously have done, they may also do those acts which they could not have previously done, because the special commissioners were authorized to do such acts. This construction will occasion less difficulty in the statutes as they now stand, and free them from some nice distinctions between the power and duties of the respective kinds of commissioners or processioners, which would be often disregarded in practice, and embarrass the operations of the act. It will place the powers and duties of the two classes of commissioners precisely on the same footing, and leave parties at liberty to apply to either, and to proceed in

*By this act of 1815, the standing processioners may take testimony, and they and the special commissioners are given all the same powers.*

MILLER
vs.
PATRICK.

Reports of
the standing
commission-
ers must be
made to
court, and
then judicial-
ly passed up-
on. Other-
wise as to the
reports of the
special com-
missioners
appointed
under either
act: they re-
port to the
clerk.

the same way until they report their work to the clerk.

The question then arises, can the clerk record the report, or must the court first approve thereof? The clause above noted which brings the duties of the two classes of commissioners to the same measure, has not altered the duty of either court or clerk. The two sets of commissioners are to act alike; but when the report is returned their duties cease, and that of the court or clerk commences. Under the act of 1796, the clerk acted on the report of the special commissioners, without the court. He still continues to act on the special commissioners' report by the act of 1815, but he is not directed or allowed in either act, to record the report of the general commissioners except by the act of 1796, according to which, he must await the approbation of the court, and this is the only provision in either act, touching the recording of their report, and it must remain as the only provision regulating the manner, in which their report must come on the record, and it is not altered by the act of 1815.

When the
standing pro-
cessioners
perform the
duties requir-
ed by both
the acts, they
make but one
report, and
that to the
court, when
it must be
passed upon
and ordered
to record.

The only difference existing by the act of 1815, in their report is this; their report, before that act, could only have contained their acts of procession-ing, and since that act it may contain depositions, as the one in question does. We conceive, however, that these depositions are to accompany and make part of their report, and that the report ought not to be divided into two reports, the one containing the acts, processioning to be returned to the clerk, to be acted upon by the court, and the other to contain the depositions alone, to be returned to, and acted upon by the clerk without the consent of the court. This division of the report into two would be embarrassing and troublesome, and is not necessarily required by the act. Both acts contemplated but one report. That report, by both, is to be made to the clerk. The court is to act upon it before it is recorded by the first act, and that action of the court is not dispensed with by the latter act, and must embrace the additional matter of testimony, which by the latter act, they were directed to add

to their report. That must undergo the same ordeal, with the first kind of report which they were to make. We therefore conceive that the general commissioners or processioners who acted on this occasion, properly took testimony, and that they as properly added it to their report of processioning acts, and made of the whole one report, and that it was proper that the court should act upon and approve that whole report before any part was recorded.

MILLER
vs.
PATRICK.

But there is an exception to the notice given by advertisement. It was inserted in three successive weekly papers, but the day of acting appointed, was before the expiration of three weeks after the first notice, and it is insisted that the three weeks notice required by the act is not satisfied by three weekly insertions, but requires three full weeks to elapse before the time of action commences.

Objection to the evidence of the publication of the notice.

Whether such a construction of the act is right we need not enquire. For the object of the publication is notice to those concerned. Here it is shown that Miller, the plaintiff in error, is the only person affected by the proceedings, and he not only attended the commissioners and interrogated the witnesses, but seems to have taken at least one deposition on his part. Such acts must be construed as a waiver of all exceptions to the sufficiency of the notice.

One who attends the com'rs, and cross examines the witnesses, and takes depositions on his part, cannot object for the lack of notice.

It is also urged that the notice was, that the party with the processioners, should meet at the house of John Patrick, and yet the depositions are taken on the ground, and not at his house.

Notice to meet at a certain dwelling house near the land, and thence to proceed around the land and take the testimony &c. will authorize the depositions to be taken at the corners as the business progresses.

To this exception, the attendance of the party concerned may be given as one answer. And there is still another. It is evident from the notice that the house of Patrick was fixed only as the point of meeting and starting to the business intended. The business according to the nature of it, was to be progressive, not only in time, but also from place to place, and whenever in this progress it became nececessary or expedient to do certain acts, or to take testimony, there was the proper place of taking it, although the notice did not mention the precise spot, at which

the depositions, would be taken, provided they were not so taken as to avoid cross examination. The remaing points are not worth notice.

There is no error in the decision and it must be affimed with costs.

*Caperton* for plaintiff; *Turner* for defendants.